**BEN LEHAVI, ESQ.**
Nevada Bar No. 14564
**BEN'S LAW**
5940 South Rainbow Boulevard
Las Vegas, Nevada 89118
Email: info@benslaw.com
Phone: (702) 518.9236
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CHANTÉ ELIASZADEH, an individual, on behalf of herself and those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CAESARS ENTERTAINMENT CORPORATION, a Delaware Corporation; CAESARS ENTERTAINMENT, INC., a Delaware Corporation; DOES I through X, and ROE CORPORATIONS I through X, inclusive,<br><br>Defendants. | Case No.: 2:21-cv-00065<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br>**(1) Breach of Contract**<br>**(2) Violation of NRS § 598.0915**<br>**(3) Violation of NRS § 598.0917**<br>**(4) Violation of NRS § 598.0923**<br>**(5) Fraud**<br><br>**(JURY TRIAL DEMANDED)** |

In the United States District Court for the District of Nevada, Plaintiff CHANTÉ ELIASZADEH brings suit against Defendants CAESARS ENTERTAINMENT CORPORATION and CAESARS ENTERTAINMENT, INC., and alleges as follows:

**Introduction**

1. This action arises from Defendants Caesars Entertainment Corporation and Caesars Entertainment, Inc.'s (collectively "Defendants") unlawful practice of operating a parking garage and charging customers greater than the posted rates at or immediately prior to their exit from the garage.

2. Defendants are the direct and indirect owners and operators of Caesars Palace—a hotel and casino located on the Las Vegas Strip.

3. Defendants own and operate a parking garage attached to Caesars Palace.

4. Defendants posted rates for parking in that garage are as follows:

    a. Less than 1 hour: Free

    b. 1-2 Hours: $12.00

    c. 2-4 Hours: $15.00

    d. 4-24 Hours: $18.00

    e. Over 24 Hours: $18.00

5. Defendants, however, routinely and commonly charge individuals $15.00 for parking stays between one and two hours.

6. Upon information and belief, Defendants routinely and commonly overcharge individuals for stays in other rate categories on their posted schedule.

7. The parking garage contains thousands of spots and attracts throngs of individuals each day.

8. By rough estimates, Defendants have unlawfully seized millions of dollars from parking customers within the applicable statute(s) of limitation.

**Parties**

9. Defendant Caesars Entertainment Corporation is a Delaware corporation with its principal place of business in Las Vegas, Nevada. Upon information and belief, Defendant Caesars Entertainment Corporation—either separately or with others—owns and operates, or owned or operated, Caesars Palace and the adjacent parking garage during all or part of the times relevant to this litigation.

10. Defendant Caesars Entertainment, Inc., formerly known as Eldorado Resorts, Inc., is a Delaware corporation with its principal place of business in Nevada that wholly owns Defendant Caesars Entertainment Corporation. Upon information and belief, Defendant Caesars Entertainment, Inc.—either separately or with others—owns and operates, or owned or operated,

///

Caesars Palace and the adjacent parking garage during all or part of the times relevant to this litigation.

11. Plaintiff Chanté Eliaszadeh is a California resident that visited Caesars Palace and parked in the adjacent garage for less than two hours from December 31, 2020, to January 1, 2021.

12. The true names of Does I through X and Roe Corporations I through X, their citizenship and capacities, whether individual, corporate, associate, partnership, or otherwise, are unknown to Plaintiff who therefore sues these defendants by such fictitious names. Plaintiff is informed and believes, and therefore alleges, that each of the defendants, designated as Does I through X and Roe Corporations I through X, are, or may be, legally responsible for the events referred to in this action, and may have caused damages to the Plaintiff, as herein alleged, and Plaintiff will ask leave of this Court to amend the Complaint to insert the true names and capacities of such defendants, when the same have been ascertained, and to join them in this action, together with the proper charges and allegations.

### Venue and Jurisdiction

13. Venue is proper under title 28, section 1391, of the United States Code because Defendants reside within this judicial district and a substantial part of the events or omissions giving rise to these claims occurred within this judicial district. 28 U.S.C. § 1391(b)(1)-(2).

14. Exercising personal jurisdiction over Defendants is proper because (1) Defendants maintain their principal places of business within Nevada and (2) all conduct relevant to this litigation occurred within Nevada. F.R.C.P. 4(k)(1)(A); *see* Nev. Rev. Stat. § 14.065(1).

15. This Court has subject matter jurisdiction over this action because Plaintiff is a resident of California, Defendants are residents of Nevada, and the amount in controversy—consisting of actual damages, punitive damages, the monetary value of the requested injunctive relief, and mandatory attorney's fees—is in excess of $75,000.00. 28 U.S.C. § 1332(a)(1).

16. This Court may further exercise subject matter jurisdiction because members of the class are citizens of states other than Nevada and amount in controversy—consisting of actual damages, punitive damages, the monetary value of the requested injunctive relief, and mandatory attorney's fees—is in excess of $5,000,000.00. 28 U.S.C. § 1332(d)(2). By rough calculation,

based upon information and belief, Defendants, on average, served at least 1,500 parking customers daily and—with a four-year class period and $3.00 overcharge per instance—actual damages alone are approximately $6,570,000.00. In total, Plaintiff demands $55,188,000.00 comprised of actual damages, punitive damages, and compensable attorney's fees on behalf of herself and the class.

**Factual Allegations**

17. At all times relevant to this litigation, Defendants owned and operated a parking garage attached to Caesars Palace.

18. Defendants posted the parking rate schedule throughout the parking garage on boards such as this:



///

19. Despite posting the parking rate in the garage for parking stays greater than one hour but less than two hours would cost $12.00, Defendants routinely charged Plaintiff and class members $15.00 for parking stays less than two hours through Defendants' automated payment system.

20. Plaintiffs' receipt indicates that she was charged $15.00 for a parking stay lasting one hour and fifty-five minutes—a period less than two hours.

21. The receipt indicates that "TAX" is included in the $15.00 charge, yet no tax known to Plaintiff—such as the sales or entertainment tax—is applicable.

22. Upon information and belief, Defendants uniformly charged customers greater than the posted rates for all other amounts posted in the parking rate schedule by the same or a substantially similar increment.

### Class Allegations

23. Plaintiff seeks certification of the following class: All individuals that parked at the Caesars Palace parking garage and were charged more than the applicable posted rate within four years prior to the filing of this action. *See generally* Nev. Rev. Stat. § 11.190(2)(c)-(d).

24. Excluded from the class are: (1) Counsel of record in this action; (2) Defendants' officers, directors, employees, and agents; and (3) the judicial officer(s) assigned to this action, as well as their staff.

25. Certification of the class is proper under Federal Rule of Civil Procedure 23.

26. The class is sufficiently numerous because it consists of at least thousands, if not tens or hundreds of thousands of individuals, that parked and overpaid for said parking at Caesars Palace. F.R.C.P. 23(a)(1).

27. Questions of law or fact are common to the class in the form of: (1) Defendants' uniform posting of parking rates; (2) Defendants' uniform practice of charging more than those posted rates through automated payment systems; and (3) Defendants' related policies and conduct common to the class. F.R.C.P. 23(a)(2).

28. Plaintiff's claims are typical of the class because she suffered the same injuries as the class, which were incurred by Defendants' common conduct. F.R.C.P. 23(a)(3).

29. Plaintiff will fairly and adequately represent the class because she understands her role in litigating this matter and her fiduciary obligations to the class if the action is certified. F.R.C.P. 23(a)(4).

30. Plaintiff's counsel will fairly and adequately represent the class because they are experienced civil litigators that are capable of prosecuting a class action.

31. Class treatment is warranted pursuant to F.R.C.P. 23(b)(1)(a)-(b) because inconsistent or varying adjudications with respect to individual class members would establish incompatible standards of conduct for Defendants and would—as a practical matter—be dispositive of non-party class members since Defendants operate a garage equally accessible to members of the general public.

32. Class treatment is further warranted pursuant to F.R.C.P. 23(b)(2) because Defendants are acting on grounds generally applicable to the class, which renders Plaintiff's requested injunctive relief appropriate for the entire class.

33. Class treatment is even further warranted pursuant to F.R.C.P. 23(b)(3) because the questions of law and fact common to the class predominate over any individual issues affecting particular class members and the class action mechanism is superior in light of the relatively small dollar value of individual claims here, as well as the desirability of aggregating claims for singular resolution in a Nevada court.

**First Cause of Action**
**Breach of Contract**
**(by Plaintiff and the Class against all Defendants)**

34. Plaintiff incorporates and re-alleges each of the paragraphs above as though fully set forth herein.

35. Defendants offered a $12.00 parking rate for stays between one and two hours by conspicuously posting a rate schedule containing that rate.

36. Plaintiff accepted that parking rate by electing to park in Defendants' garage.

37. Therefore, Plaintiff and Defendants mutually assented to a $12.00 parking rate for stays between one and two hours.

/ / /

38. Plaintiff and Defendants exchanged valuable consideration in their transaction: Plaintiff received convenient parking adjacent to Caesars Palace; Defendants received Plaintiff's business and obtained monetary payment.

39. Defendants breached their agreement with Plaintiff when they charged her $15.00 for a parking stay that was less than two hours.

40. Plaintiff had no choice but to pay the excessive, demanded price in order to leave the parking facility.

41. Defendants' breach caused Plaintiff to part with more money than she otherwise should have—namely, the $3.00 difference between the agreed-upon-rate and the actually-charged-rate.

42. Defendants and Plaintiff both had the capacity to contract at the formation of the agreement.

43. Upon information and belief, the above is true for class members as well.

### Second Cause of Action
### Violation of Nevada Revised Statutes § 598.0915
### (by Plaintiff and the Class against all Defendants)

44. Plaintiff incorporates and re-alleges each of the paragraphs above as though fully set forth herein.

45. Under Nevada Revised Statutes section 598.0915(9), (15), "[a] person engages in a 'deceptive trade practice' if, in the course of his or her business or occupation, he or she . . . [a]dvertises goods or services with intent not to sell or lease them as advertised[, or] . . . [k]nowingly makes any other false representation in a transaction."

46. Plaintiff has a private right of action to pursue this deceptive trade practice claim pursuant to Nevada Revised Statutes § 41.600(1), (2)(e), which provides that "[a]n action may be brought by any person who is a victim of consumer fraud[, such as] . . . [a] deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive."

47. Defendants engaged in deceptive trade practices when they advertised parking services at rates they did not intend to honor.

///

48. Defendants falsely represented that Plaintiff would be charged a certain rate yet programmed their automated payment system to charge her a rate greater than the rate advertised and represented.

### Third Cause of Action
### Violation of Nevada Revised Statute § 598.0917
### (by Plaintiff and the Class against all Defendants)

49. Plaintiff incorporates and re-alleges each of the paragraphs above as though fully set forth herein.

50. Under Nevada Revised Statutes section 598.0917(7), "[a] person engages in a 'deceptive trade practice' when in the course of his or her business or occupation he or she employs 'bait and switch' advertising, which consists of an offer to sell or lease goods or services which the seller or lessor in truth may not intend or desire to sell or lease, accompanied by . . . [t]endering a lease of goods advertised for sale or a sale of goods advertised for lease or tendering terms of sale or lease less favorable than the terms advertised."

51. Plaintiff has a private right of action to pursue this deceptive trade practice claim pursuant to Nevada Revised Statutes § 41.600(1), (2)(e), which provides that "[a]n action may be brought by any person who is a victim of consumer fraud[, such as] . . . [a] deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive."

52. Defendants engaged in deceptive trade practices when they advertised parking services at rates that they did not intend to honor and ultimately tendered those services on less favorable (i.e., more costly) terms than advertised.

53. Defendants' conduct was a quintessential "bait and switch" operation that sought to capitalize upon captive consumers, like Plaintiff, that had no choice but to pay automatically charged, excessive rates in order to timely secure their and their vehicles' freedom and ability to exit Defendants' premises.

### Fourth Cause of Action
### Violation of Nevada Revised Statute § 598.0923
### (by Plaintiff and the Class against all Defendants)

54. Plaintiff incorporates and re-alleges each of the paragraphs above as though fully set forth herein.

55.     Under Nevada Revised Statutes section 598.0923(2), "[a] person engages in a 'deceptive trade practice' when in the course of his or her business or occupation he or she knowingly . . . [f]ails to disclose a material fact in connection with the sale or lease of goods or services."

56.     Plaintiff has a private right of action to pursue this deceptive trade practice claim pursuant to Nevada Revised Statutes § 41.600(1), (2)(e), which provides that "[a]n action may be brought by any person who is a victim of consumer fraud[, such as] . . . [a] deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive."

57.     Defendants engaged in deceptive trade practices when they knowingly failed to disclose that they charged more than their posted parking rates upon Plaintiff's and other consumers' departure from Defendants' premises.

**Fifth Cause of Action**
**Fraud**
**(by Plaintiff and the Class against all Defendants)**

58.     Plaintiff incorporates and re-alleges each of the paragraphs above as though fully set forth herein.

59.     "A plaintiff has the burden of proving each element of fraud claim by clear and convincing evidence. These elements are: (1) A false representation made by the defendant; (2) Defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation); (3) Defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation; (4) Plaintiff's justifiable reliance upon the misrepresentation; and (5) Damage to the plaintiff resulting from such reliance." *Bulbman, Inc. v. Nevada Bell*, 108 Nev. 105, 110-11 (1992) (citing *Lubbe v. Barba*, 91 Nev. 596, 540 P.2d 115 (1975)).

60.     Defendants falsely represented that they would charge certain rates for parking in their garages.

61.     Defendants knew that representation was false because they deliberately programmed their automated payment systems to collect more than those posted rates.

/ / /

/ / /

62. Defendants intended to induce Plaintiff and similarly situated individuals to park in their garage at greater numbers based on the posted rates, which were lower than the rates actually charged.

63. Plaintiff justifiably relied on the posted rates because those rates were posted by Defendants in and around Defendants' garage.

64. Plaintiff was damaged because she lost the benefit of her bargain and parted with more money than she otherwise should.

65. Defendants sought only to enrich themselves and engaged in this scheme with a conscious disregard for the legal rights of Plaintiff and those similarly situated.

## **Prayer for Relief**

WHEREFORE, Plaintiff prays for judgment against Defendants and in favor of Plaintiff and the proposed class as follows:

1. Actual damages in an amount to be proved at trial. Nev. Rev. Stat. § 41.600(3)(a).

2. Punitive damages in an amount to be proved at trial.

3. Restitution pursuant to Nevada Revised Statutes section 598.0993.

4. An order preliminarily and permanently enjoining Defendants from charging customers at their parking garage(s) more than the posted rate(s). Nev. Rev. Stat. § 41.600(3)(b).

5. All costs of suit, including attorney's fees, pursuant to Nevada Revised Statutes section 41.600(3)(c) and any other applicable law.

6. Prejudgment interest, if available, according to proof.

7. For a jury trial.

8. For such other and further relief as the Court shall deem proper, all according to proof.

DATED: January 13, 2021.

BEN'S LAW

*/s/ Ben Lehavi, Esq.*
BEN LEHAVI, ESQ.
Nevada Bar No. 14564
5940 South Rainbow Boulevard
Las Vegas, Nevada 89118
Attorney for Plaintiff